IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) Civil Action No. 96-2489 (RLA) <br> ) |
| PUERTO RICO AQUEDUCT AND SEWER AUTHORITY and THE COMMONWEALTH OF PUERTO RICO, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## DECEMBER 1, 2004 STATUS REPORT

Pursuant to this Court's Order of June 3, 2004, the United States of America, on behalf of the Environmental Protection Agency ("EPA"), files this Status Report to update the Court regarding issues related to the Revised Consent Decree entered by this Court on June 4, 1998. In this Status Report, the United States reports on the compliance of the Puerto Rico Aqueduct and Sewer Authority ("PRASA") with permit effluent limits, the status of the "successor" permit, and the disposition of funds currently held in escrow.

1. Background

Paragraph 3(g) of the Revised Consent Decree required PRASA to "complete construction and initiate operation of secondary treatment facilities and any other treatment facilities necessary to achieve compliance with National Pollutant Discharge Elimination System ("NPDES") Permit No. PR0023795 or its successor permit" by October 31, 2001. Paragraph 3(h) of the Revised Consent Decree requires PRASA to "achieve full compliance with NPDES Permit No. PR0023795 or its successor permit" by December 31, 2001. On February 1, 1998, pursuant to Paragraph 3(a) of the

-2-

Revised Consent Decree, PRASA submitted to the Puerto Rico Environmental Quality Board ("EQB") a "mixing zone" application relating to the discharge from the Mayaguez Waste Water Treatment Plant ("WWTP").  Four years later, on February 4, 2002, EQB issued its final Water Quality Certificate ("WQC"), which provides for a mixing zone for certain of the pollutants regulated in PRASA's current permit.  PRASA then applied to EPA for a new NPDES Permit which would reflect the terms of EQB's 2002 WQC.

    2. Discussion

        a. Compliance

As reported by the United States in past pleadings, EPA has determined that the Mayaguez WWTP was ultimately constructed as required by the Revised Consent Decree and is operational.  Under the terms of its NPDES permit, PRASA is required to conduct sampling of the discharge from the plant on a monthly basis, and to submit a report of the results of that sampling to EPA.  PRASA has submitted to EPA these sampling results, known as Discharge Monitoring Reports ("DMRs").

EPA has reviewed the DMRs submitted by PRASA through August, 2004.  Those DMRs generally show continued substantial compliance by PRASA.  Thus, it is apparent that the combination of PRASA's structural improvements at the Mayaguez WWTP and the new water quality based effluent limitations for certain pollutants contained in EQB's final WQC have continued to result in an improvement in PRASA's compliance with the Clean Water Act since the filing of this action.

        b. The Successor Permit

As noted above, EQB issued its Final Water Quality Certificate providing for a mixing zone for a number of pollutants.  EQB's action was required before EPA could issue a renewal NPDES permit for the Mayaguez WWTP.  On June 1, 2004, EPA issued the final renewal NPDES permit for the

-3-

Mayaguez WWTP.  Pursuant to 40 C.F.R. § 124.19, certain persons were granted the right to petition the Environmental Appeals Board for review of any condition of EPA's June 1, 2004 permit decision.  No petitions for review were received by the Environmental Appeals Board.  Therefore, on August 1, 2004, the permit issued on June 1, 2004 became effective.

    c. <u>Disposition of Escrowed Stipulated Penalties</u>

The Court will recall that under the Revised Consent Decree, certain stipulated penalties relating to PRASA's prior violations of the Revised Consent Decree have been placed in an escrow account.  *See* Revised Consent Decree, ¶ ¶ 3, 24(b).[1]  As the United States has noted in prior Status Reports, it has been appropriate for these penalties to remain in escrow until EPA is able to review and analyze PRASA's compliance with the final, issued, and effective "successor" permit.  As noted above, the successor permit is now final and effective and EPA is thus in a position to report its analysis of PRASA's compliance with the final, issued, and effective "successor" permit.

EPA has compared PRASA's December, 2001 DMR[2] with the effective permit limits in the final successor permit.  EPA's analysis indicated that although PRASA exceeded three effluent limits, PRASA was in substantial compliance with the successor permit.[3]

---

[1] The stipulated penalties referred to here relate to PRASA's prior violations of certain design and construction deadlines.

[2] Paragraph 3(h) of the Revised Consent Decree states "By December 31, 2001, PRASA shall achieve full compliance with NPDES Permit No. PR0023795 or its successor permit."

[3] PRASA exceeded the total suspended solids (TSS) loading weekly average limit of 4,775 kg/day by achieving 5,745 kg/day.  PRASA exceeded the TSS concentration weekly average limit of 45 mg/l by achieving 46.6 mg/l.  PRASA exceeded the residual chlorine limit of .5 mg/l by achieving 2.7 mg/l.  EPA has also done an analysis of the January 2002 DMR and concluded that PRASA only exceeded the residual chlorine limit of .5 mg/l by achieving 2.7 mg/l.

-4-

d. Summary and Proposal

The United States believes that it is now incumbent upon PRASA to seek "the approval of the Environmental Protection Agency" (Revised Consent Decree, ¶ 24.b.) for the return of some or all of the escrowed stipulated penalties. In addition, quarterly reports sent to EPA by PRASA indicate that PRASA has not made its final installment payment to the entity or entities created or authorized to conduct the Mayaguez Watershed Initiative. *See* Revised Consent Decree, ¶ 11. This final installment payment is a requirement for the eventual termination of the Revised Consent Decree. Revised Consent Decree, ¶ 47.d.

In short, the burden of bringing this matter to a close now rests squarely with PRASA. Although, as in the past, EPA reserves its right to seek any appropriate relief relating to the PRASA Mayaguez facility and the Revised Consent Decree (*see* Revised Consent Decree, ¶ 45 (Retention of Jurisdiction)), in the view of the United States, it is now unnecessary for the Court to be formally and periodically notified of developments relevant to the Revised Consent Decree.

Respectfully submitted,

THOMAS L. SANSONETTI
Assistant Attorney General

_____

PETER K. KAUTSKY
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044-7611
(202) 514-3907

-5-

H.S. GARCIA
United States Attorney

*S/Lisa E. Bhatia Gautier*
LISA E. BHATIA GAUTIER [206014]
Assistant United States Attorney
District of Puerto Rico
Federal Office Building
150 Carlos E. Chardon Avenue
Hato Rey, Puerto Rico 00918

OF COUNSEL

Kim Kramer
Office of Regional Counsel
U.S. Environmental Protection Agency
Region II
290 Broadway
New York, New York  10007-1866

DATED: December 1, 2004

-6-

## CERTIFICATE OF SERVICE

I hereby certify that, this 1st day of December, 2004, I caused a copy of the December 1, 2004 Status Report to be sent to counsel at the following addresses:

Jorge Marrero-Narvaez, Esq.
Puerto Rico Aqueduct and Sewer Authority
Legal Division, 10th Floor
604 Barbosa Avenue
Hato Rey, Puerto Rico 00917

Director Federal Litigation Division
Commonwealth of Puerto Rico
Department of Justice
P.O. Box 902192
San Juan, Puerto Rico 00902-0192

_____